FILED
United States Court of Appeals
Tenth Circuit

September 8, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

SHELBY MOSES,

      Plaintiff-Appellant,

v.

CHRIS HALSTEAD,

      Defendant,

and

ALLSTATE INSURANCE COMPANY,

      Garnishee-Appellee.

Nos. 08-3088
08-3199

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:05-CV-02488-KHV)**

---

William J. Pauzauskie of Topeka, Kansas, for Plaintiff-Appellant.

Barrett J. Vahle (Curtis E. Woods with him on the brief), of Sonnenschein Nath & Rosenthal LLP, Kansas City, Kansas, for Garnshiee-Appellee.

---

Before **MURPHY**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Shelby Moses brings this appeal, asserting that the district court erred in its choice-of-law and state-law determinations. Ms. Moses requested a garnishment order, in Kansas, against Allstate Insurance Company ("Allstate") for its alleged negligent or bad faith refusal to settle Ms. Moses' claim against Chris Halstead, Allstate's insured. The district court found for Allstate, concluding that Missouri law applies and requires an actual assignment to Ms. Moses by the insured of its claim against Allstate for its failure to settle, an assignment Ms. Moses does not have. Because we conclude that Kansas law applies to this dispute, we reverse and remand.

I.

In Missouri, on November 22, 1996, Chris Halstead wrecked a car given to Ms. Moses by her father and insured by Allstate. Allstate had issued the insurance policy in Kansas to Ms. Moses' father, a Kansas resident, covering liability for uninsured motorist benefits. Ms. Moses, a passenger in the car, was injured in the accident. Shortly thereafter her father reported the accident to Allstate, requesting coverage for his daughter's injuries. Allstate began an investigation.

A year later, Ms. Moses' counsel made an offer to Allstate to settle her claims against Mr. Halstead under the Allstate policy for the policy limit of $25,000. Allstate rejected Ms. Moses' offer. Both Ms. Moses' offer to settle and

Allstate's rejection of it occurred in Kansas.

Ms. Moses then filed a tort action against Mr. Halstead in Missouri, the place of the accident. The jury awarded her $100,000 in actual damages. After the judgment was entered, Allstate paid Ms. Moses $25,000 in partial satisfaction of the judgment. Ms. Moses registered the judgment in Kansas state court and requested an Order of Garnishment against Allstate for its alleged negligent or bad faith refusal to settle with her on her claim against Mr. Halstead. Allstate removed the case to federal court.

Thereafter, Allstate filed a motion for summary judgement. The parties based their summary judgment arguments on Kansas law and the district court, without addressing any governing law issue, applied Kansas law in ruling on the motion. The court denied the motion, determining there were material issues of fact that if backed by evidence would prove Allstate's negligent or bad faith refusal to settle Ms. Moses' claims against Mr. Halstead.

At trial, Allstate changed course and contended that Missouri law should be applied. The district court took the issue under advisement, noting in the pretrial order that Allstate had asserted the applicability of Missouri law. After a bench trial, the court denied Allstate's motion for a judgment as a matter of law and held that Missouri law governs Ms. Moses' claim. The district court then found that, under Missouri law, Allstate had acted in bad faith in refusing to settle and entered judgment for Ms. Moses. Allstate filed a motion for reconsideration

arguing that, among other things, Missouri law requires an assignment from the insured, in this case Mr. Halstead, before a judgment creditor can file an action against the insurance company for its bad faith refusal to settle. Mr. Halstead did not assign his claim against Allstate for bad faith refusal to settle to Ms. Moses. The district court granted Allstate's motion for judgment, rejecting Ms. Moses' argument that the court should have applied Kansas law, which does not require an assignment in these circumstances.

## II.

We review the district court's choice-of-law and state-law determinations *de novo*. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1535 (10th Cir. 1996) ("We review choice of law determinations *de novo*, and findings of fact underlying those determinations for clear error."); *Woolard v. JLG Indus., Inc.*, 210 F.3d 1158, 1168 (10th Cir. 2000) ("A federal district court's state-law determinations are entitled to no deference and are reviewed de novo."). On appeal, the parties focus on two main issues: (1) whether Missouri or Kansas law governs the negligent or bad faith refusal to settle claim; and (2) whether under the applicable law Ms. Moses can garnish Allstate for $75,000, an amount in excess of the policy limit, for negligent or bad faith refusal to settle.

A.    *The Governing Law*

In Kansas, an insurance company can be held liable not only for acting in

bad faith but also for acting negligently. *See Spencer v. Aetna Life & Cas. Ins. Co.*, 611 P.2d 149, 155 (Kan. 1980). In Missouri, however, to hold an insurance company liable for bad faith refusal to settle the plaintiff must provide proof that the insurer acted in bad faith. *See Ganaway v. Shelter Mut. Ins. Co.*, 795 S.W.2d 554, 556 (Mo. Ct. App. 1990). The district court, in this diversity case, was initially correct in applying Kansas law to determine whether Kansas or Missouri law should govern Ms. Moses' negligent or bad faith refusal to settle claim. *See Mem'l Hosp. of Laramie County v. Healthcare Realty Trust, Inc.*, 509 F.3d 1225, 1229 (10th Cir. 2007).

In Kansas, an insurer's duties are contractually based.[1] *See Glenn v. Fleming*, 799 P.2d 79, 90 (Kan. 1990) (stating that "a wrongful failure to settle arises from the insurer's contractual obligation to defend" and "[a]n action to enforce that obligation is accordingly based on breach of contract."). Breach of this contractual duty, however, is determined by a tort standard of care. *See id*. Since 1957, Kansas courts "have used 'negligence,' 'due care,' and other tort expressions to describe the substance of what is a contract duty." *Id*. This contract-tort fusion has created confusion in defining the duty of good faith, and

---

[1] Kansas courts "see little distinction in principle between a garnishment proceeding to establish an indebtedness within policy limits and one to establish an indebtedness outside these limits arising from a breach of the insurer's duty to exercise reasonable care and good faith in settling a claim against the insured. In either case the action sounds in contract." *Glenn v. Fleming,* 799 P.2d 79, 89 (Kan. 1990).

-5-

in describing situations involving negligent or bad faith breaches of duties to settle and defend. *See id*.

This case involves two issues regarding the district court's choice-of-law determination arising out of the insurance contract. First, whether the district court erred in applying Missouri law to determine whether Allstate had a contractual obligation to act in good faith to settle. Second, whether the district court was wrong in applying Missouri law to the question of Allstate's fulfillment of such obligation.

    1.    Law Governing the Existence of Allstate's Contractual Obligation to Act in Good Faith to Settle

Kansas courts follow the Restatement (First) of Conflict of Laws (1934) in addressing choice-of-law issues. *See ARY Jewelers, L.L.C. v. Krigel*, 85 P.3d 1151, 1161 (Kan. 2004). The Restatement contains two general rules for contracts cases. *See* Restatement (First) of Conflict of Laws §§ 332 and 358 (1934).

When the question raised by the contractual dispute goes to the substance of the obligation, Kansas courts apply the primary rule contained in section 332, *lex loci contractus,* which calls for the application of the law of the state where the contract is made. *See Layne Christensen Co. v. Zurich Canada,* 38 P.3d 757, 766-67 (Kan. Ct. App. 2002); Restatement (First) of Conflicts of Law § 358, Cmnt. b (1934); *cf. In re K.M.H., * 169 P.3d 1025, 1031-32 (Kan. 2007) ("[T]o the

extent this case is viewed as a contractual dispute, Kansas courts apply the Restatement (First) of Conflict of Laws § 332 (1934), and the doctrine of *lex loci contractus*, *i.e.*, the law of the state where the contract is made governs."). It is only when the question goes to the manner and method of performance that the law of the place of performance applies. *See Layne Christensen Co.*, 38 P.3d at 766-67; Restatement (First) of Conflicts of Law, § 358, Cmnt. b (1934).

Kansas courts have struggled in determining whether questions raised in cases before them are governed by the law of the place of performance or the place where the contract was made. *See Layne Christensen Co.*, 38 P.3d at 766-76 (comparing *Novak v. Mutual of Omaha Ins. Co.*, 28 P.3d 1033 (Kan. Ct. App. 2001), applying *lex loci contractus* when determining validity of contract provision, and *Aselco, Inc. v. Hartford Ins. Group*, 21 P.3d 1011 (Kan. Ct. App. 2001), applying performance rule on duty to defend issue and *lex loci contractus* to contract interpretation issue). The Restatement recognizes the difficulty in drawing a line between these concepts:

> [T]here is no logical line which separates questions of the obligation of the contract, which is determined by the law of the place of contracting, from questions of performance, determined by the law of the place of performance. There is, however, a practical line which is drawn in every case by the particular circumstances thereof. When the application of the law of the place of contracting would extend to the determination of the minute details of the manner, method, time and sufficiency of performance so that it would be an unreasonable regulation of acts in the place of performance, the law of the place of contracting will cease to control and the law of the place of performance will be applied. On the other hand, *when the application*

-7-

*of the law of the place of performance would extend to a regulation of the substance of the obligation to which the parties purported to bind themselves so that it would unreasonably determine the effect of an agreement made in the place of contracting, the law of the place of performance will give way to the law of the place of contracting.*

Restatement (First) of Conflicts of Law § 358, Cmnt. b (1934) (emphasis added).

Allstate relied on *Aselco* in arguing that the law of the place of performance of Allstate's duty to defend should apply, asserting that the Missouri tort action was where the duty to defend occurred. Ms. Moses, on the other hand, relied on *Novak*, which rejects *Aselco*'s approach, to contend the law of the place of contracting should apply. The district court agreed with Allstate.

In *Aselco*, a panel of the Kansas Court of Appeals held that where an insurance company's performance of its duty to defend takes place in Kansas, Kansas law governs the determination of the existence of such duty. *See Aselco*, 21 P.3d at 1018. But *Aselco* neither cited to any Kansas cases nor offered any analysis for its holding. *See id.* Moreover, *Aselco* so held despite admitting that it was not required to reach the governing law issue because it was not raised in the trial court. *See id.*

A few months later in *Novak*, another panel of the Kansas Court of Appeals, including one of the judges on *Aselco*, declined to follow *Aselco* to apply the place of performance rule. 28 P.3d at 1039. The court held that the law of the place where the contract was made governed the validity of the one-year limitations provision in the contract. *See id.* The panel noted that "[a]lthough

-8-

some Kansas conflicts cases have involved issues of performance, few cases have used the place of performance rule to resolve contract choice of law decisions." *Id.* at 1039 (citing cases).

*Aselco* and *Novak* each declared it was following the Restatement (First) of Conflicts of Law (1934). *See Aselco*, 21 P.3d at 1018; *Novak*, 28 P.3d at 1039. But neither case actually explained how its analysis comported with the Restatement. *Aselco* stated that "[b]ecause [the insurance company's] performance of its duty to defend would have taken place in Kansas, Kansas law governs the determination of the existence of the duty." *Aselco*, 21 P.3d at 1018. *Novak* relied on the fact that an overwhelming majority of Kansas Supreme Court and Court of Appeals cases have applied the law of place of contracting. *See Novak*, 28 P.3d at 1039. In *Layne Christensen Co.*, however, a case decided a few months later by the same panel that decided *Aselco*, the court provided further guidance on what question to ask in applying the Restatement. *See Layne Christensen Co.*, 38 P.3d at 766-67 (holding that the meaning of the coverage limit is governed by the law of place of contracting because it goes to the substance of obligation). In *Layne Christensen Co.*, the court acknowledged the *Novak* and *Aselco* panels' struggles in applying the law of the place of performance versus the place of contracting. *See id.* at 766. It did not endorse either outcome. Instead, it followed Kansas Supreme Court precedent adopting the test set out in the Restatement and provided guidance based on section 358,

Comment b.  This test focuses on whether the question before the court goes to the substance of the obligation or the manner of performance.  *See Layne Christensen Co.*, 38 P.3d at 767 (citing *Simms v. Metropolitan Life Ins. Co.*, 685 P.2d 321 (Kan. 1984) and 4 Holmes' Appleman on Insurance 2d, Conflicts and Choice of Law, § 21.5 p. 274-75 (1998)).  Unlike *Layne Christensen Co.*, neither *Novak* nor *Aselco* analyzed whether the question before them went to the substance of the obligation or the manner of performance.

The Kansas Supreme Court has not directly addressed whether the law of place of contracting or performance governs the question whether an injured party may, under Kansas law, bring an action for negligent or bad faith refusal to settle against a tortfeasor's insurance company in a garnishment action.  Therefore, we "must predict what the Kansas Supreme Court would do if faced with the issue." *Westar Energy*, *Inc. v. Lake*, 552 F.3d 1215, 1228 (10th Cir. 2009).

Based on the foregoing analysis, we predict that the Kansas Supreme Court would agree with the reasoning of *Layne Christensen Co.* and hold that whether Ms. Moses has a cause of action for negligent or bad faith refusal to settle against Allstate goes to the substance of Allstate's contractual duties rather than the manner of performance under the insurance policy.  Therefore, the issue is governed by the law of the place where the contract was made, in this case Kansas.  Accordingly, we reverse the district court's decision applying Missouri law to this issue.

2.      Law Governing Whether Allstate Fulfilled Its Contractual Obligation to Act in Good Faith in Response to Ms. Moses' Settlement Offer

Applying the *Layne Christensen Co.* test, we address the next issue before us: does determining whether Allstate fulfilled its contractual obligation to act in good faith to settle Ms. Moses' claim go to the substance of the obligation or the manner and method of performance? In general, fulfillment of a contractual obligation goes to the manner and method of performance by the party charged with the obligation. Therefore, the law of the place of performance determines whether Allstate fulfilled its contractual obligation to act in good faith to settle. The record shows that both Ms. Moses' offer to settle and Allstate's rejection of the offer took place in Kansas. Accordingly, Kansas is the place Allstate was required to perform its contractual obligation to consider Ms. Moses' settlement offer in good faith, and the district court should have applied Kansas law to determine whether Allstate fulfilled this contractual obligation.

B.     *Applying Kansas Law*

The district court incorrectly applied Missouri law to Ms. Moses' claim for bad faith refusal to settle. As the court recognized, Missouri law requires the insured to assign its contractual claim against the insurance company for bad faith refusal to settle to its judgment creditor. *See* District Court Order, filed Oct. 23, 2007, citing cases. Ms. Moses contends that Kansas law does not require such an assignment of rights in order for her to proceed against Allstate by way of a

-11-

garnishment action. Allstate relies on *Benchmark Insurance Co. v. Atchison*, 138 P.3d 1279 (Kan. Ct. App. 2006), a case not on point, to argue that Kansas law requires an assignment in the circumstances here. In so doing, it disregards Kansas' long-standing garnishment law.

Under Kansas law, Ms. Moses, as a judgment creditor, has a right to proceed by garnishment against Allstate. *Nichols v. Marshall*, 491 F.2d 177, 184 (10th Cir. 1973) (applying Kansas law) ("When judgment was duly entered in [plaintiff's] action against [defendant] . . . Allstate's contractual duty became fixed, inuring to the benefit and use of [plaintiff], and became subject to garnishment."). "Under long standing garnishment law in Kansas, once judgment has entered, the judgment creditor then takes the place of the judgment debtor and may take that which the latter could enforce." *Id*. at 183 (citing *Burlington & M.R.R. Co. v. Thompson,* 1 P. 622 (1884)). Therefore, Ms. Moses, "a judgment creditor in a typical personal injury case where the tort-feasor is alive, and not deceased, may proceed by garnishment against the tort-feasor's insurer to satisfy within policy limits the judgment obtained against the tortfeasor."[2] *Id*.

---

[2] Moreover, "Kansas courts have gone a step farther and have held that a judgment creditor may proceed by garnishment against a tort-feasor's insurer for the unpaid balance of the judgment which is in excess of the policy limits where the insurer refused to settle within policy limits by virtue of negligence or bad faith, the courts holding that such claim sounds in contract and is subject to garnishment even though unliquidated." *Nichols,* 491 F.2d at 183 (citing *Gilley v. Farmer*, 485 P.2d 1284 (Kan. 1971) and *Bollinger v. Nuss*, 449 P.2d 502 (Kan. 1969)).

The case on which Allstate relies is fully distinguishable.  It involved an interpleader action by the insurance company, not a garnishment.  *See Benchmark Ins. Co.*, 138 P.3d at 1280.  The case was brought before any judgment was rendered against the insured or the insurance company and the injured party was not a judgment creditor.[3]  *See id*. at 1280-82.  Thus, *Benchmark* addressed the requirement of an assignment for a *non*-judgment creditor in an interpleader action – *not* an assignment to a judgment creditor in a garnishment action.

Allstate has not cited any Kansas case requiring the judgment creditor to obtain an assignment before it can bring a garnishment action against the insurance company for negligent or bad faith refusal to settle on behalf of the tortfeasor.[4]  Moreover, contrary to Allstate's assertion, when dealing with whether an injured party has to obtain an assignment of rights from the insured in order to have standing to assert a damages claim in excess of the policy limit against the insured, the Kansas Court of Appeals has expressly stated:

Kansas law is settled that in a garnishment action, a garnishor is a

---

[3] "[A]n insured's claim against an uninsured motorist carrier for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits." *Nungesser v. Bryant*, 153 P.3d 1277, 1286 (Kan. 2007) (quoting *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So.2d 1289, 1291 (Fla. 1991)).

[4] The mere fact that in some cases an insured might decide to assign its contractual rights under the insurance policy, including the right to bring an action against its insurance company for negligent or bad faith refusal to settle, does not require the conclusion that such an assignment is a legal requirement under Kansas law.  *Cf. Glenn*, 799 P.2d at 91.

> third-party beneficiary of the underlying contract of insurance entitled to assert a claim arising from a breach of the insurance company's duty to exercise reasonable care and good faith in efforts to settle a claim against its insured. *See Gilley v. Farmer*, 207 Kan. 536, 543-44, 485 P.2d 1284 (1971); *Farmco, Inc. v. Explosive Specialists, Inc.*, 9 Kan. App.2d 507, 515, 684 P.2d 436 (1984).

*Johnson v. Westhoff Sand Co.*, 62 P.3d 685, 699 (Kan. Ct. App. 2003). Accordingly, under Kansas law Ms. Moses did not need to obtain an assignment of rights from Mr. Halstead before she acquired the right, as his judgment creditor, to bring a claim against Allstate in excess of the policy limit for a negligent or bad faith refusal to settle.

With respect to the merits of the claim against Allstate, under Kansas law an insurance company has a "duty to exercise reasonable care and good faith in efforts to settle a claim against its insured." *Id.* To trigger this duty, the insured need only put the insurer on notice of the claim. *Cf. Glickman, Inc. v. Home Ins. Co.*, 86 F.3d 997, 1001 (10th Cir. 1996) (stating that based on "settled insurance contract law in this circuit and Kansas . . . the duty to defend is triggered when there is a potential of liability."). Allstate's duty to act with reasonable care and good faith was thus triggered when Ms. Moses' father put the company on notice of the accident.

The district court applied Kansas law at the summary judgment stage and concluded that there were material issues of fact preventing the court from granting Allstate's motion. District Court Order, filed Feb. 28, 2007. At trial, the

-14-

district court applied Missouri law and found that Allstate refused to settle the claims with Ms. Moses in bad faith. District Court Order, filed July 23, 2007. In so doing, the court relied on almost identical sets of facts to (1) deny Allstate's summary judgment motion (under Kansas law) and (2) find that Allstate refused to settle in bad faith at trial (under Missouri law). *Compare* District Court Orders, filed Feb. 28, 2007 and July 23, 2007. Nevertheless, because the district court has not had the opportunity to apply Kansas law to its findings of fact, we remand for it to do so in the first instance.

For the foregoing reasons, this case is **REVERSED** and **REMANDED** to the district court for further proceedings in accordance with this opinion.[5]

---

[5] Because the case is being remanded, we need not address the parties' arguments regarding Ms. Moses' attorney fees.

-15-